**Saskia MADISON, As Next Friend of M.M., A Minor, Appellant,**

v.

**Warren Reid WILLIAMSON and Jane Smith, Appellees.**

No. 01–05–00678–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 27, 2007.

Rehearing Overruled Nov. 16, 2007.

Kristin Diane Wilkinson, The Wilkinson Law Firm, Houston, TX, for Appellant.

Brett J. Sileo, Britton B. Harris, Harris, Hilburn & Sherer, L.L.P., Alexandra Ilana Smoots–Hogan, Brown McCarroll, LLP, Warren Reid Williamson, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND Justice.

Appellant Saskia Madison, as next friend of M.M., a minor, appeals a judgment in favor of appellee Jane Smith and against Warren Reid Williamson.[1] Madison contends (1) the trial court erred in granting Smith's no-evidence motion for summary judgment on Madison's negligence claims and in not allowing an adequate time for discovery; (2) the trial court abused its discretion in excluding certain summary judgment evidence; (3) Smith lacked standing to submit a proposed final judgment to the trial court, and the trial court erred in including a statement that Smith did not appear at trial in its final judgment; (5) the trial court erred in assessing court costs in favor of Smith; (6) the trial court erred in applying the election of remedies rule to Madison's award of actual damages; and (7) the trial court erred in applying the statutory damage caps to Madison's award of exemplary damages. We conclude that the trial court

---

1. Saskia Madison, M.M., and Jane Smith are aliases, used in the pleadings and briefing pursuant to a trial court order.

properly granted summary judgment to Smith, allowed adequate time for discovery, and any abuse of discretion in the exclusion of Madison's summary judgment evidence was harmless. We further conclude that Smith had standing, and the trial court did not err in the form of its final judgment. Finally, we conclude that the trial court properly assessed court costs, and properly applied the election of remedies rule and statutory damage caps. We therefore affirm the trial court's judgment, both on the jury's verdict against Williamson and the summary judgment in favor of Smith.

## Background

In 1999, Williamson lived with his wife, Smith, and their three children, a daughter and two sons. Madison lived with her daughter a few houses down the street. M.M. was seven years old in 1999.

Williamson did not appear for the jury trial on damages in this case, so the facts as presented with respect to the claims against him are uncontested. During the summer of 1999, M.M. had planned to spend the night at Williamson's and Smith's house on two separate occasions. On both occasions, Williamson bathed M.M. and his daughter together. M.M. testified that during the baths, Williamson touched her "privates." M.M. could not recall if Williamson used a washcloth or his bare hands. M.M. did not spend the night at Williamson's and Smith's house on either occasion because she got scared before she went to sleep. M.M. told Madison about the baths when she arrived at home on both occasions but Madison did not take any action.

During a weekend in October 1999, M.M. was playing with Williamson's children at Williamson's and Smith's house. M.M. was playing video games when Williamson asked to have a "private talk" with her. M.M. accompanied Williamson into his room and he locked the door. Williamson told M.M. that he wanted to show her something. Williamson then undressed M.M. and performed oral sex on her. M.M. told Williamson to stop and she screamed for Smith to help her. Smith, however, was downstairs cooking dinner and she did not hear M.M.'s cries for help. Williamson instructed M.M. not to tell anyone about what had happened. M.M. went home immediately, and she did not see Smith as she was leaving the house. M.M. told Madison about the incident as soon as she arrived at home. Madison called the police and M.M. never again visited Williamson's and Smith's house.

The State charged Williamson with indecency with a child and aggravated sexual assault in December 1999. Williamson separated from Smith and moved out of their home in June 2000. In January 2001, Williamson pleaded no contest to the Class A misdemeanor offense of assault, pursuant to a plea bargain with the State. *See* TEX. PEN.CODE ANN. § 22.01 (Vernon Supp.2006). The trial court deferred adjudication of the offense and placed Williamson on community supervision for two years. In February 2001, the trial court modified the terms of Williamson's community supervision and added a provision prohibiting Williamson from traveling on the street where M.M.'s house was located. Williamson, however, was not prohibited from visiting his children or otherwise being present on Smith's property (which is located on the same street as M.M.'s house), but to adhere to the terms of his community supervision, he had to enter Smith's residence from a rear entrance. M.M. alleges that after the trial court modified Williamson's community supervision, he continued to appear on the street in front of her house and often made intimidating faces in an attempt to frighten her.

Williamson and Smith divorced in October 2001.

Madison civilly sued Williamson and Smith, on behalf of M.M., in 2002. In her petition, Madison asserts that Smith was negligent in allowing Williamson to sexually assault M.M., and in allowing Williamson to violate the terms of his community supervision by driving on the street where M.M.'s house was located. Smith moved for summary judgment, asserting that Madison had produced no evidence that Smith had a duty to (1) prevent Williamson from sexually assaulting M.M., and (2) ensure Williamson's compliance with the terms of his deferred adjudication. The trial court granted Smith's no-evidence summary judgment. Madison's claims against Williamson for assault, false imprisonment, and negligence proceeded to trial. The jury returned a verdict in favor of Madison, awarding compensatory and exemplary damages. After electing the most favorable recovery, and applying exemplary damages caps, the trial court entered a final judgment against Williamson of $3 million in actual damages and $1.75 million in exemplary damages, plus interest and costs.

**The Summary Judgment**

Madison contends the trial court erred in granting Smith's no-evidence motion for summary judgment because she produced sufficient evidence to raise a genuine issue of material fact with regard to her negligence claims against Smith. In addition, Madison contends that the trial court abused its discretion in excluding certain summary judgment evidence. Smith responds that Madison produced no evidence of the element of duty.

■ At the outset, we note that "in addition to showing an abuse of discretion, a party complaining of error in the exclusion of evidence must also show that the trial court's error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *see also* TEX.R.APP. P. 44.1(a)(1); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992); *Bartosh v. Gulf Health Care Ctr.-Galveston*, 178 S.W.3d 434, 439 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 510 (Tex.App.-Houston [1st Dist.] 2004, no pet.). In our review of this summary judgment, we consider all of the evidence Madison presented to determine if she raises a fact issue on her negligence claims. If the evidence, including evidence that the trial court excluded, does not raise a fact issue, then any abuse of discretion in the trial court's exclusion of evidence is harmless. *See* TEX.R.APP. P. 44.1(a)(1); *Alvarado*, 897 S.W.2d at 753; *McCraw*, 828 S.W.2d at 757.

*A. Standard of Review*

■ In a Rule 166a(i) no-evidence summary judgment motion, the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims, on which the non-movant would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). The non-movant then must present evidence raising a genuine issue of material fact on the challenged elements. *Id.* A no-evidence summary judgment is essentially a pre-trial directed verdict. *Bendigo v. City of Houston*, 178 S.W.3d 112, 113–14 (Tex.App.Houston [1st Dist.] 2005, no pet.); *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). On review, we ascertain whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact. *Jackson*, 979 S.W.2d at 70–71. More than a scintilla of evidence exists if the evidence

" 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. *Havner,* 953 S.W.2d at 711. To defeat a no-evidence motion for summary judgment, the respondent is not required to marshal her proof; her response need only point out evidence that raises a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i) cmt.

### B. Negligence

■■■ A negligence cause of action has three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex.2002). The threshold inquiry in a negligence case is duty. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Mathis v. RKL Design/Build,* 189 S.W.3d 839, 844 (Tex.App.-Houston [1st Dist.] 2006, no pet.). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence at issue. *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.1998); *Siegler,* 899 S.W.2d at 197; *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In determining whether a duty exists, a court should consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Mission Petroleum Carriers, Inc. v. Solomon,* 106 S.W.3d 705, 710 (Tex.2003); *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Phillips,* 801 S.W.2d at 525. Of all these

factors, foreseeability of the risk is the foremost and dominant consideration. *Phillips,* 801 S.W.2d at 525. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 655 (Tex.1999); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 551 (Tex.1985). The Texas Supreme Court has articulated a two-prong test for foreseeability: (1) that the injury be of such a general character as might reasonably have been anticipated; and (2) that the injured party should be so situated with relation to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen. *Mellon Mortgage,* 5 S.W.3d at 655; *Nixon,* 690 S.W.2d at 551.

### 1. Negligent Failure to Prevent Sexual Assault

Madison first contends that Smith was negligent in failing to prevent Williamson from sexually assaulting M.M. because Smith owed M.M. a duty of care as the owner of the property where the sexual assault occurred.

■■■ "Generally, a person has no legal duty to protect another from the criminal acts of a third person." *Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex.1995); *Siegler,* 899 S.W.2d at 199. Property owners, however, owe a duty to those who may be harmed by the criminal acts of third parties if the risk of criminal conduct is so great that it is both unreasonable and foreseeable. *See Mellon Mortgage,* 5 S.W.3d at 655; *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 756 (Tex.1998); *Nixon,* 690 S.W.2d at 550. In considering whether a particular criminal act was so foreseeable and unreasonable as to impose a duty upon a landowner to an invitee such as M.M., we first examine the particular

criminal conduct that occurred in light of "specific previous crimes on or near the premises." *Mellon Mortgage,* 5 S.W.3d at 656 (quoting *Walker,* 924 S.W.2d at 377). The Texas Supreme Court described this examination in *Timberwalk:*

> In determining whether the occurrence of certain criminal conduct on a landowner's property should have been foreseen, courts should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them.

*Timberwalk,* 972 S.W.2d at 757. If, after applying the *Timberwalk* factors, we determine that the general danger of the criminal act was foreseeable, we then apply the second prong of the foreseeability analysis and determine whether it was reasonably foreseeable that the injured party, or one similarly situated, would be the victim of the criminal act. *Mellon Mortgage,* 5 S.W.3d at 656–57. "In essence, we consider whether the plaintiff was within the range of the defendant's apprehension such that her injury was foreseeable." *Id.* at 657 (citing *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928)); *see also Siegler,* 899 S.W.2d at 197.

In this case, Madison failed to produce evidence that Smith should have foreseen that Williamson would engage in inappropriate sexual conduct with M.M. on her property. The record contains no evidence that Williamson was ever accused of committing any crime before M.M. accused him of sexual assault in the fall of 1999. Additionally, there is no evidence that Smith knew about any prior inappropriate sexual conduct on the part of Williamson

with regard to M.M., his own children, or anyone else. The record also contains no evidence that Smith knew that Williamson bathed M.M. with his daughter on two occasions during the summer of 1999. Smith testified that she first learned about the baths from one of her sons after M.M. had accused Williamson of sexual assault in October 1999. Smith's son also told an employee at the Children's Assessment Center that Smith did not know about the baths until he told her. M.M. told Police Officer S. Valenta that Smith was at home the first time Williamson gave her a bath. Dr. Carmen Petzold, one of Madison's expert witnesses, opined that based on M.M.'s statements to Officer Valenta, Smith was probably aware that Williamson had bathed M.M. Petzold's speculation, however, does not constitute evidence that Smith was aware of Williamson's inappropriate conduct because it is not based on any personal knowledge.

Considering all the evidence in the record (including the evidence excluded by the trial court), we have found no evidence that Smith reasonably should have foreseen that Williamson would engage in inappropriate sexual conduct on her property at the time such acts took place. *See Mellon Mortgage,* 5 S.W.3d at 655; *Timberwalk,* 972 S.W.2d at 756; *Nixon,* 690 S.W.2d at 550. Madison therefore did not raise a fact issue on the element of duty for a negligence cause of action. *See Sanders v. Herold,* 217 S.W.3d 11, 17 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (affirming summary judgment on ground that no evidence existed that parents should have foreseen that son would molest child, thus precluding imposition of a legal duty to prevent criminal conduct). *Compare Childers v. A.S.,* 909 S.W.2d 282, 289 (Tex. App.-Fort Worth 1995, no writ) (holding that defendants had no duty to prevent sexual misconduct on part of their daughter with neighbor child because conduct

was not foreseeable due to defendant's lack of knowledge of conduct) *with Isbell v. Ryan,* 983 S.W.2d 335, 341 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (imposing duty on defendant to prevent sexual assault of minor girl at hands of her son when CPS investigator told defendant that her son was probably responsible for physical and sexual abuse of another girl) *and Doe v. Franklin,* 930 S.W.2d 921, 928–29 (Tex.App.-El Paso 1996, no writ) (imposing duty on defendant to prevent further sexual assaults of her granddaughter when granddaughter specifically told defendant that her grandfather had molested her) *and Cain v. Cain,* 870 S.W.2d 676, 680–81 (Tex.App.-Houston [1st Dist] 1994, writ denied) (imposing duty on defendant to prevent sexual assault of his niece when he allowed his son-in-law and niece to live at his house and he knew that his son-in-law had previously been convicted of sexually assaulting minor). The trial court, therefore, properly granted Smith's motion for summary judgment on Madison's claim that Smith was negligent in failing to prevent Williamson from assaulting M.M. *See* Tex.R. Civ. P. 166a(i).

*2. Negligent Failure to Prevent Violations of Community Supervision*

Madison also contends that Smith was negligent in failing to prevent Williamson from driving on the street where M.M.'s house was located, in violation of the terms of his community supervision, because a special relationship existed between Smith and Williamson, giving rise to Smith's duty to control Williamson's conduct.

■■■ "Generally, there is no duty to control the conduct of others." *Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 34 (Tex.2002). This general rule does not apply when a special relationship exists between the actor and the third person, which imposes a duty upon the actor to control the third person's conduct, or a special relationship exists between the actor and the other person which gives the other person a right to protection. *See id.; Van Horn,* 970 S.W.2d at 546–47; *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 292 (Tex.1996); *Phillips,* 801 S.W.2d at 525. The relationship must impose a duty upon the actor to control the third person's conduct. *Van Horn,* 970 S.W.2d at 546–47. "These [special relationships] include the relationship between employer and employee, parent and child, and independent contractor and contractee under special circumstances." *Phillips,* 801 S.W.2d at 525. The Texas Supreme Court also recently found that a special relationship existed between a medical care facility for the mentally retarded and a patient, giving rise to the facility's duty to control the actions of the patient. *See Peavy,* 89 S.W.3d at 36. No Texas court has held that such a relationship exists between a husband and wife.

■■■ The record in this case contains no evidence that Smith had any duty, right, or ability to control Williamson's conduct. Nothing inherent in this husband-wife relationship gives rise to a fact issue that either spouse had the right to control the other. *See Doe,* 930 S.W.2d at 927 (finding no special relationship between husband and wife because wife had no right to control husband); Tex. Fam. Code Ann. § 3.201(c) (Vernon 2006) ("A spouse does not act as an agent for the other spouse solely because of the marriage relationship."). Considering all the evidence in the record (including the evidence excluded by the trial court), no evidence raises a fact issue as to a special relationship between Smith and Williamson. *See Van Horn,* 970 S.W.2d at 546–47; *Doe,* 930 S.W.2d at 927. Smith therefore did not have a duty to control Williamson's conduct, and the trial court properly granted summary judgment on Madison's

claim that Smith was negligent in failing to prevent Williamson from driving near M.M.'s house. *See Peavy*, 89 S.W.3d at 34.

### C. Adequate Time for Discovery

 Madison contends that the trial court erred in granting Smith's no-evidence motion for summary judgment because adequate time for discovery had not elapsed at the time the trial court granted the motion. *See* Tex.R. Civ. P. 166a(i). Madison filed suit in October 2002, and Smith and Williamson answered in November. The trial court set the original discovery deadline for August 22, 2003 and the original trial date for September 22, 2003. Smith moved for a no-evidence motion for summary judgment a week after the August discovery deadline. The trial court later reset the trial date for December 2003, and discovery continued. The trial court granted Smith's summary judgment motion on December 5, 2003.

 Texas Rule of Civil Procedure 166a(i) provides:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

*Id.* "Whether a nonmovant has had adequate time for discovery under rule 166a(i) is case specific." *Rest. Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.-Dallas 2002, no pet.). Rule 166a(i) does not require that discovery must have been completed, only that there was "adequate time." *Specialty Retailers, Inc. v.*

*Fuqua*, 29 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). To determine whether adequate time for discovery has elapsed, we examine such factors as: (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion was on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery already completed; and (7) whether the discovery deadlines in place were specific or vague. *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 467 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *Rest. Teams Int'l, Inc.*, 95 S.W.3d at 339; *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex.App.Houston [14th Dist.] 2003, pet. denied); *Martinez v. City of San Antonio*, 40 S.W.3d 587, 591 (Tex.App.San Antonio 2001, pet. denied). We review a trial court's determination of whether an adequate time for discovery has passed under an abuse of discretion standard. *Fuqua*, 29 S.W.3d at 145. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner "without reference to any guiding rules or principles." *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999).

Madison's lawsuit had been on file for over one year at the time the trial court granted summary judgment. The trial court also extended the discovery period on one occasion, and allowed Madison to file additional summary judgment evidence late. Furthermore, Madison has made no effort to specify the additional evidence she needed to respond to the motion, or the reason she could not obtain it during the discovery period. *See* Tex. R.App. P. 166a(i) cmt ("A discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a

motion under paragraph (i) would be permitted after the period but not before."). We also note that Madison filed her own no-evidence summary judgment motion on August 22, 2003, asserting that adequate time for discovery had elapsed on Smith's defamation claim because the trial court's discovery deadline had passed. Under these circumstances, we hold that the trial court did not abuse its discretion in determining that adequate time for discovery had elapsed on Madison's negligence claims and in granting Smith's no-evidence motion for summary judgment. *See La-Rue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 873 (Tex.App.-Fort Worth 2005, no pet.) (holding that trial court did not abuse its discretion in determining that adequate time for discovery had elapsed); *McMahan*, 108 S.W.3d at 498–99 (same); *Fuqua*, 29 S.W.3d at 145 (same).

### Standing

■■■ Madison contends that because the trial court granted Smith's motion for summary judgment in an interlocutory order, Smith was not a party to the final judgment and therefore lacked standing to prepare and submit a proposed final judgment to the trial court. After the trial court granted Smith's motion for summary judgment, Madison's remaining claims against Williamson proceeded to trial, and the jury returned a verdict in her favor. The trial court never severed Madison's claims against Smith, thus the trial court's interlocutory order granting summary judgment was not final. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) ("[A]n order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties."). Madison moved the trial court to enter a final judgment. Smith

responded, submitting her own proposed final judgment for the trial court's consideration. The trial court then entered a final judgment.

Texas Rule of Civil Procedure 305 provides that "[a]ny party may prepare and submit a proposed judgment to the trial court for signature." Tex.R. Civ. P. 305. The trial court's interlocutory order granting Smith's motion for summary judgment did not terminate Smith's status as a party to this lawsuit. Madison's pleadings named Smith as a defendant at all times, and the trial court never severed Madison's negligence claims against Smith. Smith had an interest in the content of the trial court's final judgment because the judgment would make the interlocutory order granting Smith's motion for summary judgment a final, appealable order. *See Lehmann*, 39 S.W.3d at 205. The trial court therefore did not err in considering Smith's final judgment.

### Form of the Judgment

Madison contends that the trial court erred in including the following language in its final judgment: "Defendant Jane Smith did not appear at trial as she had already been granted an interlocutory summary judgment by order of this Court dated on or about December 5, 2003." Madison asserts that this language is inaccurate because Smith appeared on the first day of trial and announced that she was present to observe but would not participate.

■■■ Texas courts apply the common law presumption that whatever is omitted from the record is relevant to and supports the judgment on appeal. *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 37 (Tex. App.-Houston [14th Dist.] 2006, no pet.). "To complain on appeal about a matter that would not otherwise appear in the

record, a party must file a formal bill of exception." TEX.R.APP. P. 33.2.

The reporter's record in this case contains no evidence that Smith appeared on the first day of trial. Additionally, the appearance sheets at the beginning of each volume of the reporter's record do not reflect that Smith or her counsel appeared at trial. Furthermore, Madison failed to file a formal bill of exception to preserve this issue for appeal. *See id.* Accordingly, because the record contains no evidence that Smith appeared at trial, we apply the common law presumption and assume that Smith did not appear at trial in accordance with the statements in the trial court's judgment. *See Wilhelm,* 208 S.W.3d at 37; *see also Nicholson v. Fifth Third Bank,* 226 S.W.3d 581, 583 (Tex. App–Houston [1st Dist.] 2007, no pet.) (presuming that evidence supported trial court's judgment because appellant failed to present sufficient record on appeal); *Willms v. Americas Tire Co.,* 190 S.W.3d 796, 806 (Tex. App.-Dallas 2006, pet. denied) (same). We therefore hold that the trial court did not err in including the disputed language in its final judgment.

### Judgment

With respect to the final judgment, Madison contends that the trial court (1) abused its discretion in adjudicating court costs in favor of Smith, (2) erroneously applied the election of remedies rule, and (3) erroneously applied statutory damage caps.

### A. Court Costs

The trial court taxed costs against Williamson for Madison's case against him and against Madison for her case against Smith. Madison contends that the trial

court abused its discretion in adjudicating Smith's court costs against Madison because Smith failed to provide the trial court and Madison with an accounting of her court costs before the trial court entered its final judgment. *See Varner v. Howe,* 860 S.W.2d 458, 466 (Tex.App.-El Paso 1993, no pet.) ("All that [Texas Civil Practice and Remedies Code section 31.007(a)] seems to [require] is that the successful party present to the trial judge and opposing counsel at some time before the judgment is signed an itemized list of costs and fees incurred during the lawsuit so that the judge can determine which costs and fees are properly includable in the judgment.").

 The Texas Rules of Civil Procedure provide that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. "The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX.R. CIV. P. 141. "A 'successful party' is one who obtains a judgment of a competent court vindicating a civil claim of right." [2] *Univ. of Houston–Clear Lake v. Marsh,* 981 S.W.2d 912, 914 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *accord Bayer Corp. v. DX Terminals, Ltd.,* 214 S.W.3d 586, 611–12 (Tex.App.-Houston [14th Dist.] 2006, pet. denied); *see also Tex. River Barges v. City of San Antonio,* 21 S.W.3d 347, 358 (Tex.App.-San Antonio 2000, pet. denied) (awarding costs to defendant who prevailed on motion for summary judgment). The allocation of costs is a matter for the trial court's discretion and cannot be overturned on appeal unless the trial court abused its discretion. *Marsh,*

---

**2.** Saskia does not contest Smith's status as the "successful party" in this lawsuit. *See* TEX.R. CIV. P. 131; *Univ. of Houston–Clear*

*Lake v. Marsh,* 981 S.W.2d 912, 914 (Tex. App.-Houston [1st Dist.] 1998, no pet.).

981 S.W.2d at 914. Here, the trial court taxed costs against the unsuccessful party and thus acted within its discretion. *Id.*

In response to a request for an award of costs, the court's role is to adjudicate which party or parties is to bear the costs of court, not to determine the correctness of specific items. *See Reaugh v. McCollum Exploration Co.*, 140 Tex. 322, 325, 167 S.W.2d 727, 728 (1943); *Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied). The trial court should state in its judgment which party is to pay costs. *See* Tex.R. Civ. P. 131; *Reaugh*, 167 S.W.2d at 728; *Pitts*, 23 S.W.3d at 417. The judgment should not state the amount taxed as costs, but only that costs are awarded against a certain party. *See Pitts*, 23 S.W.3d at 417. Taxing costs, as distinguished from adjudicating those costs, is merely a ministerial duty of the clerk. *Wood v. Wood*, 159 Tex. 350, 358, 320 S.W.2d 807, 813 (1959); *see also* Tex.R. Civ. P. 129, 149, 622.

The rules do not require a successful party in a lawsuit to submit an accounting of her court costs to the trial court and opposing counsel before the entry of a judgment adjudicating costs. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.007(a); Tex.R. Civ. P. 129, 131, 149, 622. Rather, Texas Civil Practice and Remedies Code section 31.007(a) requires the successful party to submit a record of its court costs to the court clerk so that the clerk can perform its ministerial duty and tax costs in accord with Texas Rule of Civil Procedure 622. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.007(a); Tex.R. Civ. P. 622. The trial court in this case therefore did not abuse its discretion in adjudicating Smith's court costs against Madison despite Smith's failure to submit an accounting of her costs before the trial court's adjudication of costs.[3]

## B. Election of Remedies

Madison next contends that the trial court erroneously applied the election of remedies rule to limit her recovery of actual damages from Williamson. We disagree.

A party may sue and seek damages on alternative theories of liability. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998). If a plaintiff pleads alternate theories of liability, a judgment awarding damages on each alternate theory may be upheld if the theories depend on separate and distinct injuries and if separate and distinct damages findings are made as to each theory. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987). "Under the one-satisfaction rule, [however,] a plaintiff is entitled to only one recovery for any damages suffered because of a particular injury." *Utts v. Short*, 81 S.W.3d 822, 831 (Tex.2002); *accord Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex.2006); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991); *Emerson Elec. v. Am. Permanent Ware*, 201 S.W.3d 301, 314 (Tex.App.Dallas 2006, no pet.); *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). Although the traditional "one satisfaction" principle applies to cases in which an in-

---

**3.** To the extent Madison complains about the taxation of any specific costs, her remedy is a motion to re-tax costs in the trial court. *See Operation Rescue–Nat'l v. Planned Parenthood of Houston Se. Tex., Inc.*, 937 S.W.2d 60, 87 (Tex.App.Houston [14th Dist.] 1996) ("A motion to retax costs is one to correct the ministerial act of the clerk of the court in tabulating costs."), *aff'd as modified*, 975 S.W.2d 546, 570 (Tex.1998).

jured plaintiff is wholly compensated by settling defendants or other third parties, as described in *Utts,* other Texas Supreme Court authorities use the term to describe the process by which the trial court elects the remedy which affords an injured plaintiff the most favorable relief against a single defendant when multiple theories of liability cause an indivisible injury. *Compare Utts,* 81 S.W.3d at 831; *Sterling,* 822 S.W.2d at 5 *with Birchfield,* 747 S.W.2d at 367 *and Chapa,* 212 S.W.3d at 303. The latter rule applies when a defendant commits technically different acts that result in a single injury. *Casteel,* 22 S.W.3d at 390; *Emerson,* 201 S.W.3d at 314. "When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988); *accord Birchfield,* 747 S.W.2d at 367 (holding that injured plaintiffs may not recover punitive damages under the DTPA and for gross negligence in the absence of separate and distinct actual damages).

 In this case, the jury returned a verdict in favor of Madison on her claims of negligence, false imprisonment, and assault, and awarded actual damages as follows:

1. Negligence
 Actual Damages—$3,000,000
2. False Imprisonment
 Actual Damages—$10,000
3. Assault
 Actual Damages—$2, 350,000

The trial court entered a judgment against Williamson awarding Madison $3,000,000 in actual damages.

At trial, Madison did not attempt to distinguish between the damages M.M. suffered as a result of Williamson's negligence, false imprisonment, and assault. Instead, Madison presented evidence of M.M.'s damages generally, focusing on the personal injury Williamson's conduct had caused M.M., and the mental anguish that resulted. Madison submitted identical damage questions after each liability question in the jury charge. According to the evidence Madison presented at trial, M.M. suffered past and future physical pain, past and future mental anguish, past and future physical impairment, and loss of future earning capacity as a result of *all* of Williamson's inappropriate conduct. We hold the trial court properly concluded that each of the claims resulted in a single, indivisible injury. *See, e.g., Tony Gullo Motors,* 212 S.W.3d at 303 (holding that plaintiff's injury was indivisible, requiring an election between damages awarded for breach of contract, fraud and the DTPA); *Household Credit Servs., Inc. v. Driscol,* 989 S.W.2d 72, 81–82 (Tex.App.-El Paso 1998, pet. denied) (applying one satisfaction rule and limiting plaintiff's recovery for multiple torts that caused same injury); *Berry Prop. Mgmt., Inc. v. Bliskey,* 850 S.W.2d 644, 666 (Tex.App.-Corpus Christi 1993, writ dism'd by agr.) (applying one satisfaction rule and limiting plaintiff's recovery for negligence and DTPA claims that resulted in same injury); *but see Beaumont v. Basham,* 205 S.W.3d 608, 615 (Tex.App.-Waco 2006, pet. denied) (holding that election of remedies rule should not be applied to plaintiff's damage recoveries for invasion of privacy and theft because injuries were separate and distinct); *Baribeau v. Gustafson,* 107 S.W.3d 52, 61 (Tex. App.-San Antonio 2003, pet. denied) (holding that election of remedies rule should not be applied to plaintiff's damage recoveries for battery and fraud because injuries were separate and distinct). We hold that the trial court properly applied the election of remedies rule and limited Madi-

son's recovery to the actual damages awarded for her negligence claim because the negligence award afforded the greatest recovery. *See Chapa*, 212 S.W.3d at 304; *Casteel*, 22 S.W.3d at 390 (Tex.2000); *Boyce Iron Works, Inc.*, 747 S.W.2d at 787; *Birchfield*, 747 S.W.2d at 367; *AMX Enters., Inc.*, 196 S.W.3d at 206.

## C. Exemplary Damages

Madison finally contends that the trial court erred in applying statutory damages caps to the award of exemplary damages against Williamson. The jury awarded exemplary damages in the following amounts:

1. Negligence

 Exemplary Damages—$2,500,000

2. False Imprisonment

 Exemplary Damages—$50,000

3. Assault

 Exemplary Damages—$1,000,000

The trial court applied the statutory exemplary damages caps and entered a judgment awarding Madison $1,750,000 in exemplary damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b) (Vernon Supp. 2006).

■ Texas Civil Practice and Remedies Code section 41.008 provides:

(a) In an action in which a claimant seeks recovery of damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.

(b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

(1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

(c) This section does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed knowingly or intentionally:

(1) Section 19.02 (murder);

(2) Section 19.03 (capital murder);

(3) Section 20.04 (aggravated kidnapping);

(4) Section 22.02 (aggravated assault);

(5) Section 22.011 (sexual assault);

(6) Section 22.021 (aggravated sexual assault);

(7) Section 22.04 (injury to a child, elderly individual, or disabled individual, but not if the conduct occurred while providing health care as defined by Section 74.001);

(8) Section 32.21 (forgery);

(9) Section 32.43 (commercial bribery);

(10) Section 32.45 (misapplication of fiduciary property or property of financial institution);

(11) Section 32.46 (securing execution of document by deception);

(12) Section 32.47 (fraudulent destruction, removal, or concealment of writing);

(13) Chapter 31 (theft) the punishment level for which is a felony of the third degree or higher;

(14) Section 49.07 (intoxication assault); or

(15) Section 49.08 (intoxication manslaughter).

(d) In this section, "intentionally" and "knowingly" have the same meanings assigned those terms in Sections 6.03(a) and (b), Penal Code.

(e) The provisions of this section may not be made known to a jury by any means, including voir dire, introduction into evidence, argument, or instruction.

(f) This section does not apply to a cause of action for damages arising from the manufacture of methamphetamine as described by Chapter 99.

*Id.* § 41.008. Before a court will apply the exception to the statutory damage caps in section 41.008(c), a plaintiff must obtain jury findings that the defendant violated one of the criminal code provisions listed in the statute, and that the violation was committed knowingly or intentionally. *See Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 927 (Tex. App.-Dallas 2004, pet. stricken) (holding that exemption from statutory exemplary damage caps requires plaintiff to obtain jury findings on elements of listed criminal offenses and knowing or intentional mental state); *see also Murphy v. Am. Rice, Inc.*, No. 01–03–01357–CV, 2007 WL 766016, at *21 (Tex.App.-Houston [1st Dist.] Mar. 9, 2007, no pet.) (mem.op.) (noting that trial court did not apply statutory damage caps on exemplary damages because jury expressly found that defendant had engaged in criminal conduct listed in statute); *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 874 n. 13 (Tex.App.-Fort Worth 2005, no pet.) (noting that jury's malice finding alone does not trigger exception to statutory damage caps because definition of malice is different than definition of intentional or knowing conduct under Texas Penal Code); *Mission Res., Inc. v. Garza Energy Trust*, 166 S.W.3d 301, 315 (Tex.App.-Corpus Christi 2005, pet. granted) (holding that exemption from statutory exemplary damage caps requires plaintiff to prove defendant's criminal conduct beyond a reasonable doubt); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 68 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (noting that trial court

did not apply statutory damage caps on exemplary damages because jury expressly found that defendant had engaged in criminal conduct). The finding of fraud, malice, or gross negligence necessary to obtain exemplary damages is not sufficient to evoke the exception to the statutory damage caps because the application of the exception under these circumstances would be inconsistent with the statutory scheme of limiting exemplary damages even when fraud, malice, or gross negligence has been proven by clear and convincing evidence. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 41.003, 41.008 (Vernon Supp.2006); *Signal Peak Enters. of Tex., Inc.*, 138 S.W.3d at 927.

■ Here, Madison did not obtain a jury finding that Williamson violated any of the criminal code provisions listed in section 41.008(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(c); *Signal Peak Enters. of Tex., Inc.*, 138 S.W.3d at 927. Although the jury found that Williamson acted with malice, thus entitling Madison to punitive damages, such a finding alone is insufficient under the Civil Practice and Remedies Code to remove the caps on exemplary damages because it lacks the required statutory finding of a knowing or intentional violation of the criminal law. *See Signal Peak Enters. of Tex., Inc.*, 138 S.W.3d at 927; *Johnston*, 178 S.W.3d at 874 n. 13; *see also* TEX. PEN.CODE ANN. § 6.03(a)-(b) (Vernon 2003) (defining knowing and intentional conduct). Without a jury finding that Williamson knowingly or intentionally violated one of the criminal provisions listed in section 41.008(c), we hold that the trial court properly applied the statutory damage caps to Madison's award of exemplary damages. *See id.* § 41.008(a)-(c); *Murphy*, 2007 WL 766016, at *21; *Johnston*, 178 S.W.3d at 874 n. 13; *Mission Res., Inc.*, 166 S.W.3d at 315;

*Moody,* 161 S.W.3d at 68; *Signal Peak Enters. of Tex., Inc.,* 138 S.W.3d at 927.

The actual damages for the negligence claim were broken down as follows:

1. Negligence
 Past and future physical pain, mental anguish, and physical impairment—$2,000,000
 Future loss of earning capacity—$500,000

In calculating Madison's exemplary damages under the damage caps, the trial court multiplied Madison's economic damages[4] by two ($500,000 × 2 = $1,000,000), and then added $750,000 in noneconomic damages[5] for a total of $1,750,000 in exemplary damages.[6] We hold that the trial court properly calculated Madison's exemplary damages in accordance with section 41.008(b)(1). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1).

### Conclusion

We hold that the trial court properly granted summary judgment to Smith, allowed adequate time for discovery, and that any abuse of discretion in the exclusion of Madison's summary judgment evidence was harmless. We further hold that Smith had standing to submit a proposed final judgment, and the trial court did not err in the form of its final judgment. Finally, we hold that the trial court properly assessed court costs, and properly applied the election of remedies rule and the statutory damage caps in determining the judgment for actual and exemplary damages. We therefore affirm the judgment of the trial court.

---

**4.** " 'Economic damages' means compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(4) (Vernon Supp.2006).

**5.** " 'Noneconomic damages' means damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12).

**6.** " 'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages." *Id.* § 41.001(5).