**Opinion issued December 7, 2023**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-22-00458-CV

————————————

**PANGCO ASSOCIATES, LLC AND YU-PEI "PATTY" WANG, INDEPENDENT EXECUTOR OF THE ESTATE OF DA-REN "NICK" PANG, Appellants**

**V.**

**HARAKI, LTD., Appellee**

———————————————————————————————

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 91764-CV**

———————————————————————————————

### MEMORANDUM OPINION

This appeal concerns asserted jury charge error arising from the trial court's refusal to submit requested jury questions on a negligence cause of action.

Da-Ren Pang (Nick) and Pangco Associates, LLC leased retail space for a furniture store in a shopping center owned by appellee Haraki, Ltd. During a

subsequent rent dispute, Haraki locked Nick and Pangco LLC out of the leased space. The parties executed a settlement agreement giving Nick and Pangco LLC ten days to remove their inventory from the space and to vacate the premises.

During that ten-day period, Haraki began demolition and renovation of the leased space for a new tenant. Haraki's demolition of floor tiles resulted in the release of dust containing asbestos fibers onto the inventory. Nick and Pangco LLC claimed that their inventory had been destroyed. They sued Haraki for breach of their settlement agreement and for negligence.

During the course of the litigation, Nick died. His wife, Patty Wang, was appointed as the independent executor of his estate, and she continued the litigation in that capacity.

At the conclusion of trial, the trial court submitted questions to the jury on Pangco LLC and Patty's breach-of-contract claim, but, over objection, refused to submit their tendered questions on their negligence claim. After the jury answered the breach-of-contract questions in favor of Haraki, the trial court rendered a take-nothing judgment against Pangco LLC and Patty.

Appellants Pangco Associates, LLC and Yu-Pei "Patty" Wang, as independent executor of the estate of Da-Ren "Nick" Pang (hereinafter collectively, "Pangco") now appeal.

In a single issue, Pangco asserts that the trial court abused its discretion in refusing to submit its requested negligence questions to the jury and that the error was harmful.

We reverse and remand.

## Background

In 2006, Pangco entered into a commercial lease with Haraki for retail space at the Meadow Park Shopping Center in Alvin, Texas. Pangco operated a furniture store at that location for many years, but eventually fell behind on its lease payments. Haraki sued Pangco for the unpaid rent, but allowed Pangco to continue to occupy the leased space. In 2017, after the arrearage had substantially increased, Haraki locked the doors of the store and denied Pangco any further access.

On May 5, 2017, Haraki and Pangco[1] executed a "Release Agreement of All Claims" ("Settlement Agreement"), which is the subject of this appeal.

In the Settlement Agreement, Pangco agreed to pay Haraki $60,000.00 in installments. And Haraki agreed to release "any and all claims" against Nick and Pangco LLC and to grant "use of the lease space" for 10 days, as follows:

> [For the] sole consideration of [$60,000.00] to be paid to [Haraki] in two installments, the first being a payment of [$40,000.00], in certified funds, on May 5, 2017, and the second being a payment of [$20,000] in certified funds, on May 15, 2017, [Haraki] does hereby . . . release, acquit and forever discharge [Nick and Pangco LLC] and all . . . heirs,

---

[1] Nick signed the Settlement Agreement "individually and on behalf of Pangco Associates, LLC."

3

[and] executors . . . from any and all claims, actions, causes of action, demands . . . whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen damages and the consequences thereof resulting or to result from the lease agreement entered into between [Haraki] and Nick Pang on July 24, 2006, which was subsequently renewed on June 3, 2009 between [Haraki] and [Pangco LLC].

It is further understood that [Nick] will have use of the lease space at [address] upon execution of this document and payment of the $40,000 installment, until May 15, 2017.

After Pangco paid Haraki the initial $40,000.00 installment, Pangco was given access to the leased space to recover its inventory.

At some point during the 10-day period, and while Pangco's inventory remained in the leased space, Haraki began demolition and renovation of the space for its new tenant. It is undisputed that Haraki's contractor removed tile flooring, releasing dust and debris into the space and onto Pangco's inventory, and that the dust was later found to contain asbestos.

Haraki attempted to clean Pangco's inventory. However, Pangco refused to reclaim its inventory from the premises, contending that due to the asbestos exposure—particularly on the porous surfaces such as upholstery and mattresses—the items could not safely be sold to customers.

Pangco sued Haraki for breach of contract and negligence. Pangco alleged that the Settlement Agreement expressly granted it the use of the leased space for ten days to remove its inventory and that Haraki breached the agreement by

4

beginning demolition during that time period. Pangco asserted that, as a result, it was unable to timely conduct an inventory, pack, and move out. Pangco sought the "return of the $40,000.00 payment to Haraki."

Pangco also alleged that Haraki breached a duty to Pangco to "test the flooring and other materials which were the subject of the demolition before beginning the work" and that, as a result, "friable asbestos fibers were released into and permeated the air and were deposited on the entire contents of the store premises," including Pangco's inventory. Pangco further asserted that Haraki's negligence had caused it to lose "the entire contents of the store which were rendered worthless by way of contamination." Pangco attached a report to its petition, confirming the presence of asbestos in the leased space, as reflected in samples of the construction debris.

At trial, Patty testified that Pangco LLC owned a number of furniture stores, that she was Pangco LLC's bookkeeper, and that she was present during the events at issue in this case. She testified that, after Nick signed the Settlement Agreement and paid the initial installment, he made arrangements to move the furniture. However, when she and Nick returned to the store to begin moving, "one-third of the showroom floor was 'scrap-piled,'" and there was dust all over their furniture— including on fabric upholstery and mattresses. They had the construction dust and debris immediately tested and learned that it contained asbestos.

5

Patty additionally testified that although Haraki had attempted to clean the furniture, it could not simply be cleaned. Rather, once it was contaminated with asbestos, it had "deadly material on it" and was not safe to sell. She testified that the wholesale value of the lost inventory was $283,289.95. The trial court admitted into evidence photographs of the demolition and a list of the lost inventory.

Mike Collins, a City of Alvin building inspector, testified that, in May 2017, his office received a report that work was being performed without a permit at the leased space, and he went to investigate. He saw through the windows "straight floor, black mastic material in the middle, and [on] the left side all the furniture piled on top of each other." Collins testified that the City required a demolition permit and that "any commercial business was supposed to provide an asbestos survey to the permit office" in order to obtain the permit. Because Haraki had not obtained an asbestos survey or applied for a demolition permit, Collins posted an order at the leased space to "stop work" until an asbestos survey was performed.

Collins subsequently received a report showing that asbestos was "present in the space." He further testified that, despite cleaning, the leased space would not be "asbestos-free" and "there would still be asbestos there." And he received a follow-up report, which continued to show levels of asbestos present. The trial court admitted into evidence copies of asbestos reports that were prepared for Haraki.

Winston McKenzie, a certified appraiser and a member of the board of directors of the National Wholesale Furniture Association, testified as an expert for Pangco. He visited the leased space and inspected the furniture at issue. He testified that, based on the nature of random sampling, whether Haraki's attempt to clean the asbestos from the furniture had been adequately performed could not be known with certainty. And Pangco would be required to inform its customers about the asbestos exposure. McKenzie opined that, based on his knowledge and expertise, Pangco's furniture was simply not marketable and "had no value."

John Papapavlou, of Haraki, admitted that he had agreed to give Nick use of the leased space until May 15, 2017 and that any demolition occurring prior to that date was contrary to the terms of the Settlement Agreement. He noted, however, that there was urgency to ready the space for the new tenant.

Cass Shewbart, manager of the shopping center, admitted that he was aware that the City required an asbestos inspection prior to the removal of tile, but asserted that his contractor was at fault for failing to comply.

At the close of trial, Pangco submitted a proposed jury charge containing questions on its breach-of-contract and negligence claims. The trial court, over Pangco's objection, submitted only the breach-of-contract claim to the jury.

**Charge Error**

In a single issue, Pangco asserts that the trial court abused its discretion in refusing to submit its requested negligence questions to the jury and that the error was harmful.

**A.     *Standard of Review and Governing Legal Principles***

We review a trial court's submission of questions to a jury under an abuse-of-discretion standard. *Moss v. Waste Mgmt. of Tex.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  A trial court abuses its discretion if it acts arbitrarily or unreasonably, or without reference to guiding rules or principles. *Id.*

Ordinarily, a trial court has broad discretion in submitting questions to a jury. *In re D.R.*, 177 S.W.3d 574, 581 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). However, this discretion is subject to the requirement that the questions submitted fairly place the disputed issues before the jury. *Id.*  Texas Rule of Civil Procedure 278 states that a trial court "shall submit the questions, instructions, and definitions in the form provided by Rule 277 [that] are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278; *see also id.* 277 (trial court must "submit such instructions and definitions as shall be proper to enable the jury to render a verdict"). Rule 278 thus "provides a substantive, non-discretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them." *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

8

In determining whether a trial court erred in refusing to submit a requested question, we "view the evidence as if the trial court had instructed a verdict against the party seeking the submission." *Cunningham v. Haroona*, 382 S.W.3d 492, 506–07 (Tex. App.—Fort Worth 2012, pet. denied). That is, we consider the evidence in the light most favorable to the party whose question was refused. *Id.* at 507. Generally, if the evidence on a controlling and controverted issue amounts to more than a scintilla or if there is conflicting probative evidence in the record, a trial court is obligated to submit a question to the jury. *Id.* at 506–07.

If we conclude that the trial court erred by refusing to submit requested questions to the jury, we may not reverse the judgment unless we also conclude that the error was harmful. *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010). Charge error is harmful if it "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case on appeal." *See* Tex. R. App. P. 44.1(a). In determining harm, we must examine the entire record. *See Gunn v. McCoy*, 554 S.W.3d 645, 676 (Tex. 2018).

**B.** *Analysis*

At the charge conference, Pangco timely objected that the trial court's charge did not include its tendered questions on its negligence claim.[2]  Those questions

[2]
**QUESTION _____**

Did the negligence, if any, of Haraki, Ltd. proximately cause the occurrence in question?

Answer "Yes" or "No" _____

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

**QUESTION_____**

What sum of money, if paid now in cash, would fairly and reasonably compensate [Pangco] for their damages, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any.

(1) the amount that [Pangco] paid to Haraki, Ltd. as consideration for the settlement agreement [$_____];

(2) the loss of plaintiffs' furniture and home furnishings inventory at the Alvin Pangco Furniture store [$_____].

10

followed the language of the Texas Pattern Jury Charges. *See* State Bar of Tex., *Tex. Pattern Jury Charges—Gen. Negligence, Intentional Personal Torts & Workers' Compensation*, PJC 2.1, 2.4, 4.1, 32.1 (2022). The trial court overruled Pangco's objection and marked its request: "Denied." Pangco therefore properly preserved its complaint for appeal. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 272–278.

Accordingly, Pangco was entitled to the submission of its requested negligence questions if they were raised by the pleadings and supported by some evidence. *See* TEX. R. CIV. P. 278. A negligence claim requires that a party plead and present evidence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

Pangco pleaded that Haraki had a duty to Pangco to "test the flooring and other materials which were the subject of the demolition before beginning the work" because Pangco was in possession of the leased space and its inventory was there. Pangco alleged that Haraki breached that duty and that, as a result, "friable asbestos fibers were released into and permeated the air and were deposited on the entire contents of the store premises," including Pangco's inventory. Pangco also pleaded that Haraki's negligence caused it to lose "the entire contents of the store which were rendered worthless by way of contamination." Pangco therefore pleaded a negligence cause of action against Haraki. *See id.*

11

At trial, Pangco presented evidence that Haraki performed demolition work inside the leased space while Pangco's inventory was still in the space and that construction dust and debris contacted or covered Pangco's inventory. There was also undisputed evidence that Haraki failed to obtain the City's required asbestos survey prior to beginning the work and that subsequent reports obtained by Haraki confirmed that asbestos was present in the dust and debris that covered Pangco's inventory.

The parties disputed whether the furniture—including fabric upholstery and mattresses—had been fully remediated or whether its retail value had been permanently lost. Pangco presented evidence that the value of its lost inventory totaled $283,289.95. This is more than a scintilla of evidence to support the submission of Pangco's negligence claim to the jury. *See id.*

Accordingly, because Pangco's negligence claim was properly raised by its pleadings and supported by some evidence, Pangco's negligence question should have been submitted to the jury. *See* TEX. R. CIV. P. 278; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999) (holding that trial court "must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence").[3]

---

[3] *See also Cunningham v. Haroona*, 382 S.W.3d 492, 506–07 (Tex. App.—Fort Worth 2012, pet. denied) (holding that if more than scintilla of evidence is presented or conflicting probative evidence exists, trial court is obligated to submit question

12

Haraki argues on appeal that the trial court properly refused to submit Pangco's negligence question to the jury because it was subsumed within the breach-of-contract claim that was submitted and because questions on both theories would have confused the jury.

"Plaintiffs are generally entitled to obtain findings that will support alternative theories of recovery, even if those theories address but a single injury." *Hyundai Motor Co.*, 995 S.W.2d at 668; *see Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (holding that party may sue and seek damages on alternative theories of liability); *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

"When a party tries a case on alternative theories of recovery *and a jury returns favorable findings on two or more theories*, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (emphasis added).[4] That is, the prevailing party is "entitled to judgment on the most favorable theory supported by the pleadings, evidence, *and verdict.*" *Tony Gullo Motors I, L.P.*

to jury); *see, e.g.*, *Premium Valve Servs. v. Comstock Oil & Gas, LP*, No. 01-15-00108-CV, 2016 WL 4253896, at *4 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.).

4    *See Utts v. Short*, 81 S.W.3d 822, 831 (Tex. 2002) ("Under the one-satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered because of a particular injury."); *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

*v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (emphasis added). It is *after* a jury returns favorable findings on two or more theories that the prevailing party must elect a theory of recovery, and not before. *See Ins. All. v. Lake Texoma Highport, LLC*, 452 S.W.3d 57, 78 (Tex. App.—Dallas 2014, pet. denied) ("Where the prevailing party fails to make an election, the trial court should use the findings affording the greatest recovery and render judgment accordingly.").

Here, Pangco's pleadings and evidence presented two distinct theories or causes of action: breach of contract and negligence. *See Kimleco Petrol., Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied).

With respect to its breach-of-contract cause of action, Pangco pleaded and presented evidence that the terms of the Settlement Agreement expressly granted it the use of the leased space for a defined 10-day period and that Haraki breached the agreement by entering the space and beginning demolition during that agreed period. Pangco sought the return of its $40,000.00 payment made to Haraki under the Settlement Agreement. The jury charge as submitted asked whether Haraki had complied with the terms of the Settlement Agreement.[5] And the jury could have

---

[5]     The liability question on Pangco's breach-of-contract claim asked:

**QUESTION 1**

14

concluded, in the associated damages question, that Pangco was entitled to the return of its $40,000.00.[6]

With respect to its negligence cause of action, Pangco alleged in its petition and presented evidence that Haraki breached a duty to Pangco to "test the flooring and other materials which were the subject of the demolition before beginning the work"; that, as a result, "friable asbestos fibers were released into and permeated the air and were deposited on the entire contents of the store premises," including Pangco's furniture inventory; and that Haraki's negligence caused Pangco to lose $283,289.95 in inventory. The tendered questions on negligence asked the jury to

---

Did [Pangco] and [Haraki] agree that [Pangco] would have use of the [Leased Space] upon execution of the [Settlement Agreement] and payment of the $40,000 installment, until May 15, 2017? [Answer "Yes" or "No"]

. . . .

If you answered "Yes" . . . :

**QUESTION 2**

Did [Haraki] fail to comply with the agreement? [Answer "Yes" or "No"]

[6]  The damages question on Pangco's breach-of-contract claim asked:

**QUESTION 3**

What sum of money, if paid now in cash, would fairly and reasonably compensate [Pangco] for the damages, if any, that resulted from [Haraki's] failure to comply?

. . . .

(1) the amount that [Pangco] paid to [Haraki] as consideration for the settlement agreement [$_____];

(2) the loss of plaintiffs' furniture and home furnishings inventory at the Alvin Pangco Furniture store [$_____].

15

consider whether Haraki failed to use ordinary care and whether such failure proximately caused Pangco's damages. The jury could have concluded, in the associated damages question, that Pangco was entitled to the value of its lost inventory.[7]

Therefore, contrary to Haraki's assertion, Pangco's negligence claim was not subsumed within its breach-of-contract claim. And the record does not reflect any finding by the trial court that the two separate theories would confuse the jury. *See Kiefer v. Cont'l Airlines, Inc.*, 10 S.W.3d 34, 38 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Lawyers frequently argue alternative theories of liability to juries.").

We thus conclude that the trial court abused its discretion in refusing to submit in its charge Pangco's requested jury questions on its negligence claim because the questions were raised by the pleadings and supported by some evidence. *See* TEX. R. CIV. P. 278; *Hyundai Motor Co.*, 995 S.W.2d at 663; *Elbaor*, 845 S.W.2d at 243; *Moss*, 305 S.W.3d at 81.

We next determine whether the error was harmful, i.e., "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1); *Transcon. Ins. Co.*, 330 S.W.3d at 225. "Charge error is generally considered harmful if it relates

---

[7]     *See* note 2.

16

to a contested, critical issue." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

Based on our review of the record, we conclude that the trial court's refusal to submit Pangco's requested jury questions on its negligence claim deprived Pangco of the opportunity to have the jury consider a contested, critical issue that had support in the pleadings and the evidence, with its distinct damages. *See, e.g.*, *Smooth Sols. Ltd. P'ship v. Light Age, Inc.*, No. 04-08-00093-CV, 2009 WL 1804846, at *5 (Tex. App.—San Antonio June 24, 2009, no pet.) (mem. op.); *see also Turner v. Precision Surgical, L.L.C.*, 274 S.W.3d 245, 249 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("A party is entitled to an affirmative submission of all of its theories of recovery that have support in the pleadings and evidence."); *Watson v. Brazos Elec. Power Co-op., Inc.*, 918 S.W.2d 639, 646 (Tex. App.—Waco 1996, writ denied) (holding error in failing to include requested question was harmful because it deprived plaintiff of right to have jury decide merits of claim).

Accordingly, we hold that the trial court's error in refusing to submit Pangco's requested questions on its negligence claim to the jury probably caused the rendition of an improper judgment and was harmful. *See* TEX. R. APP. P. 44.1(a)(1); TEX. R. CIV. P. 278; *Transcon. Ins. Co.*, 330 S.W.3d at 225; *Moss*, 305 S.W.3d at 81.

We sustain Pangco's sole issue.

17

## Conclusion

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.