Opinion issued March 17, 2022



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00197-CV

_____

**MOSES MALONE JUNIOR, Appellant**

**V.**

**JAMES HARDEN, Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-52944**

---

## O P I N I O N

Appellant Moses Malone, Jr., sued appellee James Harden and others for causes of action arising out of an assault and robbery that occurred on June 25, 2016. Relevant here, Malone alleged that Harden was part of a civil conspiracy to commit the assault after Malone created a Facebook post criticizing Harden.

Harden moved for summary judgment, asserting that Malone had no evidence to support his civil conspiracy claim and pointing to the lack of any connection between Harden and the parties convicted of the aggravated robbery. The trial court granted Harden's summary judgment, and Malone nonsuited the remaining defendants.

On appeal, Malone contends that the trial court (1) erred in granting summary judgment because Malone presented adequate evidence to establish a genuine dispute of material fact on each element of his conspiracy claim; (2) abused its discretion in sustaining Harden's objections to hearsay statements contained in Malone's summary judgment evidence; and (3) erred in denying his motion for continuance and motion to compel because the denial created an undue burden on Malone to establish a fact issue.

Because we conclude that Malone had adequate time for discovery and there was no evidence to support an essential element of Malone's civil conspiracy claim against Harden, we affirm.

## Background

On June 23, 2016, Malone created a Facebook post criticizing Harden for the cost associated with Harden's basketball camp for children. Malone stated in the post that the price excluded some children from participating. After making this post, mutual acquaintances informed Malone that Harden was angry about the

Facebook post. Malone also exchanged text messages with Imaine C. Molo, who was an acquaintance of both Malone's and Harden's. One of the text messages in the exchange was purportedly sent by Harden himself, criticizing Malone for bringing up issues on social media and calling Malone names.

Malone was later assaulted and robbed early in the morning on June 25, 2016 outside V Live, an "afterhours" club in Houston. Malone alleged that he was invited to come to the club, where he was attacked by a group of men at the direction of Darian Blount, an employee of V Live. As Blount approached Malone at the time of the assault, Blount referenced the Facebook post and criticized Malone for disrespecting Harden. Malone further alleges that Eric "DJ Eric" Dillard witnessed the assault and "either [F]acetimed or videotaped the incident."

In the hours prior to the assault, Harden and Molo had been celebrating on a party bus and had arrived at V Live around the same time the assault occurred. Malone's bodyguard and friend John Thomas witnessed the assault, and then observed Blount and others who participated in assaulting Malone walk into the club. Thomas saw Blount and others greeting Harden and others inside the club, and he heard Dillard announce to the club that there was a "green light" on Malone.

Blount was eventually convicted of aggravated robbery in connection with the events on June 25, 2016, and he was assessed a punishment of 35 years'

3

confinement. Two other individuals pled guilty to related charges. No criminal charges were ever filed against Harden.

Malone filed a civil suit against V Live and related defendants on August 10, 2016, based on theories of general negligence, negligent hiring, and premises liability. V Live closed amid financial difficulties in late 2016. In May 2017, Malone added Harden as a defendant, alleging that Harden, acting through Blount, committed assault, conspired to commit assault, and that Harden "conferred authority on agent Darian Blount" and that "Blount was acting on the orders of Defendant James Harden when he and his associates attacked [Malone]."

Harden moved for no-evidence summary judgment, asserting that there was no evidence that he was liable for the alleged assault, no evidence of the alleged conspiracy, and no evidence that anyone acted as an agent for Harden. Harden attached excerpts from Malone's deposition, in which Malone testified that Harden never touched him or threatened him. Malone further testified that he had never spoken to Harden aside from meeting in passing him a "few times" prior to the incident. Malone also testified that he had no evidence that Harden knew Malone would be at V Live on the night Malone was assaulted. Nor did Malone have any specific information that Harden either encouraged or gave Blount authority to attack Malone.

In his response to Harden's motion for summary judgment, Malone presented the following evidence in support of his claims against Harden:

- A copy of his Facebook post criticizing the cost of Harden's sports camp for kids.

- The statement of John Thomas,[1] who said that a friend of his, identified as Big Tony, worked for Harden. Big Tony told Thomas that Harden was "very upset" about the Facebook post. Thomas further recounted his observations regarding the night Malone was assaulted.

- The transcript from criminal trial of Darian Blount, which included testimony from Malone, Molo, Dillard, and others.

- A copy of text messages from Molo's phone, one of which stated, "If you got something to say. We not doing no social media. I will pull up wherever you at and see what's going on," and criticized Malone "for even going on Facebook talking shit. Fuck boy." The next message said, "You know who that is." Molo's messages went on to say that she wanted to sit both Malone and Harden down "and talk man to man" so that "we may can do something for the inner city together as a team." She also pointed out that Harden "didn't make no money off the camp today. He donated all that money to a kids foundation."

- Depositions from multiple people, including V Live's manager Damon Cobbs, acquaintances of Malone's, Herb Baker and Robert Amie, Malone himself, and Harden.

Malone also moved to compel Harden's responses to his second request for production, primarily seeking cell phone records and bank statements. Harden objected to the motion to compel, asserting that Malone had failed to obtain any evidence that Harden was involved in the assault during the first round of

---

[1] The document itself purports to be an affidavit, but it is not notarized or certified.

discovery and depositions and, thus, the requests seeking additional information from Harden's phone and bank records were a fishing expedition.

Harden further objected to portions of Malone's summary-judgment evidence. Relevant here, Harden objected to portions of Thomas's, Baker's, and Amie's statements and depositions as containing hearsay regarding what those individuals heard from third parties. The trial court sustained the objections as to the hearsay statements contained in Thomas's statement regarding what Thomas heard from Big Tony, the hearsay statements in the depositions of Baker and Amie regarding what they heard from Lennox, and the hearsay statements in Malone's own deposition regarding what Malone heard from third parties about a "greenlight" against him.

At the summary-judgment hearing, Malone clarified that he had abandoned all of his claims except his claim against Harden for conspiracy to commit assault. The trial court granted Harden's no-evidence motion for summary judgment, dismissing Malone's claim against Harden. The trial court also denied Malone's motion for continuance and to compel responses to his second request for production. Malone subsequently nonsuited the remaining defendants, and this appeal followed.

## No-Evidence Summary Judgment

In his first issue, Malone argues that the trial court erred in granting Harden's no-evidence motion for summary judgment.

### A.    Standard of Review

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* Once the party seeking the no-evidence summary judgment files a proper motion, the respondent must produce summary judgment evidence that raises a genuine issue of material fact on the challenged elements. *See id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn v. Love*, 321 S.W.3d 517, 524 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

We review a trial court's no-evidence summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). In reviewing a no-evidence summary judgment, we consider the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Gonzalez v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We will affirm the no-evidence summary judgment if (1) there is no evidence on the challenged element, (2) the evidence offered to prove the challenged element is no more than a scintilla, (3) the evidence establishes the opposite of the challenged element, or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015); *City of Keller*, 168 S.W.3d at 810.

**B.    No evidence of conspiracy to commit assault**

Harden argued, in part, in his motion for summary judgment that Malone had no evidence to support his claim for civil conspiracy to commit assault. The supreme court has defined the elements of civil conspiracy as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)); *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort."). Harden argues that, among other defects in Malone's case, there is no evidence of any meeting of the minds on the object to be accomplished or course

8

of action between himself and Blount, the man convicted of committing the aggravated robbery of Malone.

Malone posits that the "sole reason [he] was attacked on the night of the incident was over the Facebook post he made about Mr. Harden's basketball camp." Malone argues that Harden's "own actions were an overt threat, encouragement, instigation, and eventually an affirmation of the attack and assault of Mr. Malone."

However, none of the evidence adduced by Malone indicates that Harden reached any meeting of the minds with Blount as to the underlying assault. Considering the summary-judgment evidence in the light most favorable to Malone, we conclude that Malone failed to present any evidence that Harden knew of or approved Blount's intent to assault Malone.

Permitting all reasonable inferences and construing the evidence in the light most favorable to Malone's claim, Malone presented summary-judgment evidence that he made a post on Facebook criticizing the price Harden charged for his kids' basketball camp. Several acquaintances of Malone's heard from others associated with Harden that Harden was aware of the post and angry about it. For example, John Thomas heard from Big Tony, an employee of Harden's, that Harden was angry about the post. Baker and Amie heard from Harden's sister's boyfriend, James Lennox, that Harden was talking about "doing Moses Malone" and that

Harden got angry at Lennox when he suggested trying to "squash" the conflict between the men peacefully. None of these interactions, however, indicate that Harden was planning with Blount to assault Malone.

Malone also presented evidence of his texts with Molo regarding the Facebook post. Malone received a text from Molo's phone that he believes Harden sent. That text stated, "If you got something to say. We not doing no social media. I will pull up wherever you at and see what's going on," and it criticized Malone for using social media to post about his problems with Harden's camp. The next message, which Malone believes was sent by Molo, said, "You know who that is." Molo's messages went on to say that she wanted to sit both Malone and Harden down "and talk man to man" so that "we may can do something for the inner city together as a team." She also pointed out that Harden "didn't make no money off the camp today. He donated all that money to a kids foundation." Malone replied that he was not aware that Harden donated the funds from the camps. Again, this text exchange does not contain any evidence that Harden was working with or conspiring with Blount to assault Malone.

Malone argues that speech alone can be an overt act supporting conspiracy, citing *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 368 (Tex. 2000). We observe, however, that none of Harden's speech as identified by Malone in his summary-judgment evidence demonstrates a meeting of minds between Harden

10

and Blount, or the other assailants, regarding assaulting Malone. *See Agar Corp., Inc.*, 580 S.W.3d at 141 (setting out elements of civil conspiracy). Nor do Harden's purported threats support a conclusion that he was acting in combination with Blount or others to accomplish the unlawful purpose of assaulting Malone. *See Tilton*, 925 S.W.2d at 681.

Regarding evidence relevant to the assault itself, Malone presented statements and testimony from several eyewitnesses that Dillard, a DJ at V Live, encouraged Malone and his friends to come to the club on the night he was assaulted. When Malone arrived and parked in his designated VIP parking space, he was approached by Blount, who was an employee at V Live. Blount referenced the Facebook post and the disrespect he believed it showed to Harden prior to assaulting Malone. Several other men participated with Blount in assaulting Malone, but it is undisputed that Harden was not one of the assailants. Blount's statements immediately prior to the assault demonstrate that he did not like Malone's post about Harden. These statements do not show that Harden was aware of, encouraged, or approved Blount's assault on Malone.

During the assault, Malone saw Dillard holding up his phone, as if he were recording the assault with his phone's camera. Malone indicated that he believed Dillard either Facetimed or recorded the assault to show Molo or Harden, but there was no evidence that Harden was the recipient of that Facetime call or that he was

11

ever shown any video that Dillard might have taken of the assault. No video was presented as evidence, either during the criminal trial or as part of the summary-judgment record.

After the assault, while Malone was calling police, John Thomas saw people, including some men who were present during the assault on Malone, high-fiving and greeting Harden inside the club. Thomas also heard Dillard make a statement after the assault that there was a "greenlight" on Malone. None of this evidence indicates that Harden had a meeting of the minds with Blount or others about the assault on Malone. None of this evidence indicates that Harden was aware of the assault or had approved of it.

Malone argues that civil conspiracy can be proved by course of conduct from which tacit agreement to act in concert may be inferred and that the agreement does not need to extend to all details of the scheme. *See Wackman v. Rubsamen*, 602 F.3d 391, 408–09 (5th Cir. 2010). Malone further asserts that conspiracy may be, and often must be, proven through circumstantial evidence. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1969) (recognizing that "proof of a conspiracy may be, and usually must be made by circumstantial evidence," but "vital facts may not be proved by unreasonable inference" or "by piling inference upon inference"). Malone has failed, however, to provide any evidence—circumstantial or otherwise—that

Harden was connected with Blount, that Harden knew of Blount's intent to assault Malone, that Harden intended to participate in a conspiracy with Blount and the other assailants to hurt Malone, or that Harden and Blount had a meeting of the minds on the object or course of action. The meeting of the minds element is an essential element of the civil conspiracy claim. *See Tri*, 162 S.W.3d at 556; *Times Herald Printing Co. v. A.H. Belo Corp.*, 820 S.W.2d 206, 216 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that proof of intent to participate in conspiracy is necessary to meet "meeting of the minds" element).

Because Malone provided no evidence of one of the essential elements of his claim for civil conspiracy to commit assault against Harden, we conclude that the trial court properly granted summary judgment. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc.*, 206 S.W.3d at 582.

We overrule Malone's first issue.

In his second issue, Malone argues that the trial court erred in sustaining Harden's objections to certain hearsay statements contained in his summary-judgment evidence. Because we have already considered all the evidence submitted by Malone and have concluded that, even with the hearsay statements, he has not presented any evidence of an essential element of his conspiracy to commit assault claim, we need not consider this issue.

## C. Adequate time for discovery

In his third issue, Malone argues that the trial court erred in denying his motion for continuance to compel discovery in response to his second request for production.

We review a trial court's determination that there has been an adequate time for discovery for an abuse of discretion. *Madison v. Williamson*, 241 S.W.3d 145, 155 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner "without reference to any guiding rules or principles." *Id.* (quoting *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)). When determining whether adequate time for discovery has elapsed, we consider (1) the nature of the cause of action; (2) the nature of the evidence necessary to controvert the no-evidence motion; (3) the length of time the case has been active in the trial court; (4) the amount of time the no-evidence motion has been on file; (5) whether the movant has requested stricter time deadlines for discovery; (6) the amount of discovery that has already taken place; and (7) whether the discovery deadlines that are in place are specific or vague. *Id.*

Here, the nature of the case was a civil conspiracy case arising out an assault that occurred in 2016. Malone filed his case in 2016 and added Malone as a defendant in May 2017. While the case was pending, the police investigation into the assault and the criminal trial of Blount occurred. In connection with his civil

suit, Malone was able to obtain discovery and depose multiple witnesses, including Harden himself. Harden filed his no-evidence motion for summary judgment on July 29, 2019, more than two years after he was named as a defendant in Malone's suit. The motion for summary judgment was on file for nearly two months before the trial court granted the motion and dismissed Malone's claims against Harden.

In his motion for continuance and to compel additional discovery, Malone asserted that he needed additional access to Harden's phone records and bank statements. However, Malone has not shown how this additional discovery will reveal evidence that had not already come to light during the criminal investigation into the assault and subsequent discovery in the civil case. We cannot say, under the facts of this case, that the trial court abused its discretion in denying Malone's motion for continuance and to compel further discovery. *See id.*

We overrule Malone's third issue.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

15